NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 30, 2013
Decided July 18, 2013

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-2757

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District |
| | of Illinois, Eastern Division. |
| *v.* | |
| | No. 10 CR 527-1 |
| RYAN SCOTT, | |
| *Defendant-Appellant*. | James B. Zagel, |
| | *Judge*. |

**O R D E R**

Convicted on drug and gun charges, Ryan Scott appeals only from the 157-month prison sentence that the district court imposed. Although that sentence is below his properly calculated range under the U.S. Sentencing Guidelines, Scott urges nonetheless that the district

court overlooked his central arguments in mitigation – that his status as a career offender overstates his criminal history and that the base offense level for ecstasy, the drug he was selling, is too high. We conclude, however, that the district court adequately addressed these arguments, and thus we affirm its judgment.

## I

Scott was on his way to sell ecstasy (more formally, 3,4-methylenedioxymethamphetamine, or MDMA) to an informant when police intercepted his car and discovered 300 ecstasy pills and a loaded handgun. Charged with violating 21 U.S.C. § 841(a)(1) (possession of a controlled substance with intent to distribute) and 18 U.S.C. §924(c)(1)(A) (possession of a firearm in furtherance of the drug trafficking crime), he pleaded guilty, and his case was turned over to the Probation officer for preparation of a pre-sentence report.

The Drug Quantity Table in U.S.S.G. § 2D1.1(c) does not include listings for ecstasy, and so it is necessary to compute the base offense level by using the Drug Equivalency Tables. Those tables equate 1 gram of ecstasy to 500 grams of marijuana. See U.S.S.G. § 2D1.1 cmt. n.8(D). The probation officer concluded that the ecstasy seized from Scott weighed 73.4 grams and was thus equivalent to 36.7 kilograms of marijuana. That quantity of marijuana calls for a base offense level of 18. See U.S.S.G. § 2D1.1(a)(5), (c)(11).

Scott had amassed enough prior convictions to make him a career offender for purposes of section 4B1.1 of the Guidelines: he had an earlier conviction for manufacture or delivery of a controlled substance, for which he was sentenced to three years' imprisonment, and a prior conviction for armed robbery, for which he received a 15-year sentence. This meant that his criminal history category was a VI; had it not been for his career-offender status, his seven criminal-history points would have placed him in category IV. See U.S.S.G. § 4B1.1(b); *id.* ch. 5, pt. A. Moreover, had he not been a career offender, his total offense level after a three-level reduction for acceptance of responsibility would have been 15 for his drug crime. Even he concedes, however, that he technically qualifies as a career offender. That status, combined with his conviction under section 924(c), led to a guidelines imprisonment range of 262 to 327 months.

Scott urged the district court to impose a sentence below the guidelines range. His criminal-history category of VI, he argued, overstates the seriousness of his criminal record. He also asserted that equating 1 gram of ecstasy to 500 grams of marijuana would lead to "a sentence that is greater than necessary to serve the objectives of sentencing." In support of the latter proposition, he cited one district-court decision, *United States v. McCarthy*, 09 Cr. 1136 (WHP), 2011 WL 1991146 (S.D.N.Y. May 19, 2011), but he did not mention that by the date of

sentencing several other district courts had rejected *McCarthy*, see *United States v. Thompson*, No. 10 CR 30168, 2012 WL 1884661, at *5 (S.D. Ill. May 23, 2012); *United States v. Kamper*, 860 F. Supp. 2d 596, 601-02 (E.D. Tenn. 2012); *United States v. Ferguson*, No. 2:09-CR-888TC-1 (D. Utah Dec. 10, 2010), aff'd, 447 F. App'x 898, 902-03 (10th Cir. 2012). Scott also proffered the report of a psychologist indicating that his childhood had been troubled and that he had experienced sexual and physical abuse. The psychological difficulties documented in that report and his drug abuse warranted a sentence below the guideline range; Scott suggested a total imprisonment term of 96 to 120 months. The government acknowledged that Scott had cooperated for a brief time after his arrest and helped to make a case against another man. It recommended a total sentence of 157 months (a significant 105 months below the bottom of his guideline range).

The district court concluded that Scott's guideline range, influenced as it was by the career-offender rules, would produce a sentence that was "out of proportion" and "in the context of this case out of whack." The court further noted Scott's troubled childhood and "life of crime," and considered his projected age upon release. It expressed the hope that he would leave prison more mature and less likely to reoffend and ultimately sentenced Scott to the 157 months recommended by the government.

## II

On appeal Scott contends that the district court committed several procedural errors and also imposed a prison sentence that is substantively unreasonable. His central point is that the district court failed to address his two principal arguments in mitigation: that applying the career-offender guideline would overstate the seriousness of his criminal history, and that endorsing the ratio of 1 gram of ecstasy to 500 grams of marijuana in the Drug Equivalency Tables would yield a sentence "greater than necessary to serve the objectives of sentencing." The first of these two arguments is puzzling because, as the government notes, the district court explicitly considered and *accepted* Scott's contention that a sentence within the career-offender range would be too high in his case, and as a result imposed a sentence that was below 60% of the low end of the guidelines. Scott is thus reduced to arguing that the court was unreasonable when it chose not to give him an even greater discount. We need not decide if such an argument can *never* succeed, but we are confident that it has no merit here. The district court has broad discretion to choose an appropriate sentence, and it did not abuse that discretion here. See *United States v. Trujillo-Castillon*, 692 F.3d 575, 578 (7th Cir. 2012); *United States v. Coopman*, 602 F.3d 814, 818 (7th Cir. 2010).

Scott is correct that the district court did not address his contention about the ecstasy-to-marijuana ratio, but the court was under no obligation to do so. In particular, it was not

required to answer the abstract policy argument that the ratio defined in the Drug Equivalency Tables is "unworthy of application in *any* case," and that is all Scott was saying. *See United States v. Aguilar-Huerta*, 576 F.3d 365, 367–68 (7th Cir. 2009); *see also United States v. Garthus*, 652 F.3d 715, 721 (7th Cir. 2011). More fundamentally, the ratio turned out to be irrelevant in Scott's case because he is a career offender who not only was trafficking in ecstasy but admittedly possessed a gun while doing so. As we noted earlier, his conviction under section 924(c) meant that he faced an imprisonment range of at least 262 to 327 months no matter the type or quantity of the drugs he was trafficking. See U.S.S.G. § 4B1.1(c)(3). Thus, a closer ecstasy-to-marijuana ratio would not have affected his imprisonment range. See *United States v. Moreno-Padilla*, 602 F.3d 802, 812 (7th Cir. 2010); *United States v. Anderson*, 517 F.3d 953, 966 (7th Cir. 2008).

Scott has also raised several other procedural points that we can dispense with briefly. He contends that the district court did not adequately explain its sentencing decision and failed to mention the psychologist's report. But the court did enough when it acknowledged Scott's dysfunctional upbringing (a focus of the report) and further considered his history and characteristics, including his age and the "life of crime" he had led. See 18 U.S.C. § 3553(a)(1). The court also commented on the length of time in prison that it thought would be needed for Scott to acquire the necessary maturity to be deterred from future criminal conduct. See *id.* § 3553(a)(2)(B). Given this individualized assessment, there was no need for the judge to utter the words "psychological report" or mention every possible mitigating factor that could be gleaned from that report. See *United States v. Grigsby*, 692 F.3d 778, 791–92 (7th Cir. 2012); *United States v. Young*, 590 F.3d 467, 474 (7th Cir. 2009). Indeed, Scott's insistence that his principal arguments were those about his criminal history and the Drug Equivalency Tables implies that other factors alluded to in the psychologist's report were ancillary and thus did not require explicit response. See *United States v. Martinez*, 650 F.3d 667, 672 (7th Cir. 2011); *United States v. Olmeda-Garcia*, 613 F.3d 721, 723 (7th Cir. 2010).

Finally, Scott urges us to vacate his prison sentence as unreasonable. He identifies no reason to support this ambitious request, which fails to take into account the fact that we, as an appellate court, are entitled to give the district court's below-guideline sentence a presumption of reasonableness. See *United States v. Jackson*, 598 F.3d 340, 345 (7th Cir. 2010) ("We have never deemed a below-range sentence to be unreasonably high."); *United States v. Wallace*, 531 F.3d 504, 507 (7th Cir. 2008); *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005).

We **AFFIRM** the judgment of the district court.